UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RODNEY GEORGE DOWNEY,

    Plaintiff,

v.

DR. JOHN DOE, et al.,

    Defendants.

Civil No. 06-4718 (DRD)

**O P I N I O N**

**APPEARANCES**:

    RODNEY GEORGE DOWNEY, Plaintiff Pro Se
    105 Presidential Blvd., Apt. 2A
    Paterson, New Jersey  07522

**DEBEVOISE**, District Judge:

Plaintiff Rodney George Downey seeks to bring this action in forma pauperis pursuant to 28 U.S.C. § 1915.  This Court will reopen the file and grant Plaintiff's application to proceed in forma pauperis.  For the reasons expressed below, this Court will dismiss the federal claims asserted in the Complaint, decline to exercise supplemental jurisdiction over claims arising under state law, and re-close the file.

**I.  BACKGROUND**

Plaintiff asserts violations of his constitutional rights under 42 U.S.C. § 1983 arising from his incarceration at Bergen County Jail in Hackensack, New Jersey.  Plaintiff sues Dr. R.F. Grady, Medical Director of Bergen County Jail, and Dr. John Doe, a physician at the jail. Plaintiff states his claim as follows:

> On Wed. July 12, 2006 I saw the Dr. at 8:30 P.M. while I was housed in the medical unit of the Bergen County Jail. At that time I requested pain medicine, having dealt with me in the past I was expecting to receive the same meds that I was getting in the past. But the Dr. decided that for some strange reason that regular tylenol wold work the same as oxycontin and Percocets. See Attached 1. Also saws the Dr. on two more occasions and was told that he would order me something stronger for pain, Monday July 17, 2006, and Tuesday July 18, 2006, needless to say that on all occasions he informed me that he had ordered me something stronger for pain than tylenol. As my medical records will show.

(Compl. ¶ 6.)

Attached to the Complaint are three pages of handwritten notes on a form entitled "Bergen County Sheriff's Detention Center, Medication Order Sheet." Plaintiff is listed as the patient. The notes indicate that OxyContin was prescribed as follows: 60 mg. PO BID on November 4, 2003; 40 mg. PO BID on December 26, 2003; 20 mg. PO BID on January 6, 2004, and January 23, 2004.

For relief, Plaintiff seeks a declaratory judgment that Defendants failed to provide adequate medical attention according to the Eighth Amendment, unspecified injunctive relief, and compensatory and punitive damages. (Id. ¶ 7.)

## II.  LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2)(B). The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a

claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, __ U.S. __, __, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted); see also Haines v. Kerner, 404 U.S. 519, 520 (1972).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 127 S. Ct. at 2200 (citations and internal quotation marks omitted).

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Thomas v. Independence Tp., 463 F.3d 285, 296-97 (3d Cir. 2006); Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004).

### III.  DISCUSSION

Federal courts are courts of limited jurisdiction.  See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884).  "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport

Area School Dist., 475 U.S. 534, 541 (1986).  A district court may exercise jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority."  U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

"When evaluating a claim brought under § 1983, we must first 'identify the exact contours of the underlying right said to have been violated' in order to determine 'whether [plaintiff] has alleged a deprivation of a constitutional right at all.'"  Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)).  If so, the Court determines whether the defendant can be held

4

liable for that violation. Natale, 318 F.3d at 581; Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000).

Plaintiff does not indicate in the Complaint whether he was confined at Bergen County Jail as a pretrial detainee or a convicted prisoner. Arrestees and pretrial detainees have a right under the Due Process Clause of the Fourteenth Amendment to adequate medical care, and the Eighth Amendment acts as a floor for due process inquiries into medical conditions of pretrial detainees. See Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). While "the due process rights of a [pretrial detainee] are at *least* as great as the Eighth Amendment protections available to a convicted prisoner, id. (citation omitted), the proper standard for examining such claims is the standard set forth in Bell v. Wolfish, 441 U.S. 520 (1979) i.e., whether the inadequate medical treatment amounted to punishment prior to an adjudication of guilt.

The Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law. See Bell, 441 U.S. at 535.[1] "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Bell, 441 U.S. at 540. "In assessing whether the conditions are reasonably related to the assigned purposes, [a court] must further inquire as to whether these

---

[1] "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Bell v. Wolfish, 441 U.S. 520, 537, n.16 (1979) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72, n.40 (1977)); see also City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983).

conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." Hubbard v. Taylor, 399 F.3d 150, 159 (3d Cir. 2005) (quoting Union County Jail Inmates v. DiBuono, 713 F.2d 984, 992 (3d Cir. 1983)).

In previous cases, the United States Court of Appeals for the Third Circuit has not applied a different standard than that set forth in Estelle v. Gamble, 429 U.S. 97 (1976), (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pretrial detainee is sufficient under the Fourteenth Amendment.  See Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir.2003) (citation omitted).  This Court will therefore evaluate the claim for inadequate medical care under the Eighth Amendment standard, set forth in Estelle, used to evaluate similar claims.

The Eighth Amendment's prohibition against cruel and unusual punishment obligates jail authorities to provide medical care to inmates.  See Estelle, 429 U.S. at 103; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  To state a cognizable medical claim, inmates must "demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." Rouse, 182 F.3d at 197.  A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).  To establish deliberate

6

indifference, an inmate must demonstrate that "the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842; Rouse, 182 F.3d at 197. Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197.

In this case, Plaintiff complains about the treating physician's decision to prescribe Tylenol for Plaintiff's unspecified pain, instead of the OxyContin that had been prescribed in the past.[2] However,

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner . . . .
>
> Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued . . . . But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent

---

[2] This Court notes that the U.S. Food and Drug Administration recently "strengthened the warnings and precautions sections in the labeling of OxyContin (oxycondone HCL controlled-release) Tablets, a narcotic drug approved for the treatment of moderate to severe pain. In recent months, there have been numerous reports of OxyContin diversion and abuse in several states. Some of these reported cases have been associated with serious consequences including death. In an effort to educate health care providers about these risks, Purdue Pharmaceuticals, manufacturer of the product, has issued a warning in the form of a 'Dear Healthcare Professional' letter." http://www.fda.gov/cder/drug/infopage/oxycontin/ (Date created: Jan. 22, 2004, updated June 26, 2006; last visited: June 29, 2007).

>cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

Estelle, 429 U.S. at 106-107 (internal quotation marks omitted).

Plaintiff's disagreement with the treating physician's prescription does not establish deliberate indifference that is actionable under § 1983. At most it is medical malpractice. The Court is therefore constrained to dismiss Plaintiff's inadequate medical care claim for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

B. State Claims

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" Growth Horizons, Inc., 983 F.2d at 1284 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. United Mine Workers v. Gibbs, 383 U.S. at 726; Growth

Horizons, Inc., 983 F.2d at 1284-1285.  In this case, the Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation, and declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV.  CONCLUSION

The Court reopens the file, grants Plaintiff's application to file the Complaint without prepayment of fees, dismisses Plaintiff's federal claims, declines to exercise supplemental jurisdiction over claims arising under state law, and re-closes the file.

       /s/  Dickinson R. Debevoise  
      **DICKINSON R. DEBEVOISE, U.S.D.J.**

Dated:  July 6, 2007